**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
**CHUZHOU JINCHENG METAL WORK CO.,**
**LTD.,**

                                  **Plaintiff,**

         -against-

**AT-SAF INC.,**

                               **Defendant.**
------------------------------------------------------------------x

**REPORT AND**
**RECOMMENDATION**

**20-CV-745 (LDH)**

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

Plaintiff Chuzhou Jincheng Metal Work Co., Ltd. ("Jincheng" or "plaintiff") commenced this diversity action against AT-SAF Inc. ("AT-SAF" or "defendant") on February 11, 2020, alleging two causes of action: breach of contract and account stated.   See generally Complaint (Feb. 11, 2020) ("Compl."), Electronic Case Filing ("ECF") Docket Entry ("DE") #1.   Currently pending before this Court, on a referral from the Honorable LaShann DeArcy Hall, is Jincheng's June 4, 2020 motion for default judgment, see Referral Order (June 5, 2020); Request for Default Judgment (June 4, 2020) ("Pl. Mot."), DE #8; Memorandum of Law in Support of Default Judgment (June 24, 2020) ("Pl. Mem."), DE #12.   For the reasons that follow, this Court respectfully recommends that plaintiff's motion for default judgment be granted in part and denied in part, and that Jincheng be awarded damages as set forth below.

## BACKGROUND

Jincheng is a China-based corporation that manufacturers metal, including scaffolding, scaffold tubing, and other scaffolding accessories, which it sells to customers across the world. See Compl. ¶¶ 6, 8.   AT-SAF is an exterior construction contractor with its principal place of business in South Richmond Hill, New York.   See id. ¶¶ 7, 9.   According to the allegations set

forth in the Complaint, in 2016, AT-SAF placed numerous orders to purchase scaffolding accessories and related goods from Jincheng.  See id. ¶ 10.  For each order, AT-SAF agreed to pay Jincheng (1) "the purchase price of the goods ordered" by AT-SAF; (2) "the shipping costs" related to delivery of those goods; and (3) either "the Delivery Duty Paid ('DDP') charges itemized in Jincheng's invoices or the actual DDP charges incurred by Jincheng."  Id. ¶ 11. Plaintiff generated eleven invoices corresponding to each of these purchases, copies of which are attached to the Complaint, along with related documents showing the actual DDP charges incurred and related delivery orders, see Ex. A to Compl. (Invoices and Related Documents), DE #1 at ECF pp. 6-45.[1]  According to the Complaint, Jincheng delivered the ordered scaffolding accessories and related goods on time, and AT-SAF accepted these deliveries without objection. See Compl. ¶¶ 12, 25-26.  While AT-SAF paid a portion of the balances owed as each of the commercial invoices became due, it failed to pay the remaining balance owed to Jincheng on the invoices.  See id. ¶ 13.  Plaintiff avers that AT-SAF acknowledged in writing that it owes Jincheng the remaining balance under these commercial invoices, see id. ¶ 16, and offers a series of WhatsApp messages from AT-SAF President Sarbjit Singh in which Singh does not dispute that AT-SAF is indebted to Jincheng for approximately $95,000.  See Ex. C to Compl.

---

[1] Many of the documents filed by plaintiff appear together as a single large docket entry, rather than as separate attachments (which would have generated distinct ECF entry numbers for each document).  As a result, the record is a confusing conglomeration of documents, many of which display identical docket numbers.  See, e.g., DE #8 (consisting of plaintiff's Request for Default Judgment, its Proposed Judgment, an affirmation, and five exhibits attached to that affirmation).  For the reader's convenience, this Court includes the corresponding ECF page number next to certain entries (i.e., Proposed Judgment, DE #8 at ECF pp. 3-5).

(WhatsApp Messages), DE # 1 at ECF pp. 48-51.[2]

Plaintiff also provides a summary of the information contained in these eleven invoices (and the related documents attached to the pleading) in a chart submitted as an exhibit to the Complaint, see Ex. B to Compl. (Summary of Invoices), DE #1 at ECF pp. 46-47.   That document shows the following agreements between the parties:[3]

### 1.  April 19, 2016 Agreement

The earliest-dated commercial invoice attached to the Complaint is numbered JC160419 and is dated April 19, 2016.   See Invoice JC160419, DE #1 at ECF p. 36 (hereafter, referred to as the "April 19th Agreement").   That invoice provides for 9,100 pieces of scaffolding accessories valued at $36,598.00, plus ocean freight costs totaling $3,760.00 and DDP charges of $1,885.80.   See id.   It also lists "terms and conditions" including a delivery date of "35 days after receiving 30% deposit, balance against [Bill of Lading[4]] copy[.]"   Id.[5]   Based on the foregoing, Jincheng alleges that the total amount due from AT-SAF was $43,193.80, see Summary of Invoices at ECF p. 47.   Jincheng claims that it is owed $569.80 in connection with

---

[2] Those messages show that an individual named "Sarbjit Singh NY" responds "ok" when told that he owes "[a]bout 95 thousand dollars" to "jc[,]" see WhatsApp Messages at ECF p. 50, which presumably refers to Jincheng.

[3] For the sake of clarity, the Court lists the eleven agreements provided to the Court in chronological order, from the date on which they were entered into by the parties (and not in the seemingly random order in which they appear as attachments to the Complaint).

[4] The Bill of Lading (denotated as "B/L" in the various Agreements) "is a document normally issued by [a] shipowner when goods are loaded on its ship, and may, depending on the circumstances, serve as a receipt, a document of title, a contract for the carriage of goods, or all of the above."   Asoma Corp. v. SK Shipping Co., Ltd., 467 F.3d 817, 823 (2d Cir. 2006) (citation omitted).

[5] Also provided to the Court is a document, consisting mostly of Chinese characters and numbers, on "Fuda Purui Intertrans Co. Ltd." letterhead.   See Additional Document, DE #1 at ECF p. 37.   As Jincheng neither translates this document nor references it in its moving papers, it is not clear how this document corresponds to the April 19, 2016 Agreement, and the Court does not rely upon it.

the April 19th Agreement,[6] taking into account three payments made by AT-SAF towards this balance – the first on July 7, 2016 for $15,000.00, the second on July 12, 2016 totaling $18,000.00, and a final payment of $9,624.00 on July 20, 2016.  See id.

## 2. April 23, 2016 Agreement

Another commercial invoice submitted with the Complaint is numbered JC160423 and is dated April 23, 2016.  See Invoice JC160423, DE #1 at ECF p. 38 (hereafter, referred to as the "April 23rd Agreement").  That invoice provides for 4,210 pieces of scaffolding accessories valued at $13,481.00, plus ocean freight costs totaling $1,880.00 and DDP charges of $1,030.50. See id.  It also lists "terms and conditions" including a delivery date of "35 days after receiving 30% deposit, balance against B/L copy[.]"  Id.  Plaintiff also proffers a document from Prime Agency, a Los Angeles-based company, that lists AT-SAF as the delivery recipient of "scaffold accessories," and reflects the estimated delivery arrival date (June 1, 2016) and pick-up location (Maher Terminal (E416)).  See Delivery Document, DE #1 at ECF p. 40.[7]  Based on the foregoing, Jincheng alleges that the total amount due from AT-SAF was $18,596.55.  See Summary of Invoices at ECF p. 47.  Jincheng claims that it is owed $2,205.05 in connection with the April 23rd Agreement, taking into account two separate payments made by AT-SAF totaling $16,391.50.  See id.

---

[6] In connection with the first two agreements, both from April 2016, this Court concludes that no amounts are owing, for the reasons discussed in the Damages section of this opinion.

[7] Also provided to the Court is a document, consisting mostly of Chinese characters and numbers, on "Fuda Purui Intertrans Co. Ltd." letterhead.  See Additional Document, DE #1 at ECF p. 39.  Again, Jincheng neither translates this document nor references it in its moving papers, and the Court does not rely upon it.

### 3. June 13, 2016 Agreement

Next, plaintiff attaches a commercial invoice numbered JC160613 and dated June 13, 2016.  See Invoice JC160613, DE #1 at ECF p. 41 (hereafter, referred to as the "June 13th Agreement").   That invoice provides for 902 pieces of scaffolding accessories valued at $34,915.00, plus ocean freight costs totaling $3,800.00 and DDP charges of $2,568.00.   See id. It also lists "terms and conditions" including a delivery date of "35 days after receiving 30% deposit, balance against B/L copy[.]"   Id.   Plaintiff also proffers (1) a second invoice dated August 31, 2016, which notes that the actual DDP paid totaled $4,490.41, see Actual DDP Invoice, DE #1 at ECF p. 42, (2) a Department of Homeland Security U.S. Customs and Border Protection ("CBP") Entry Summary noting $166.86 in additional fees, see CBP Entry Summary, DE #1 at ECF p. 43, and multiple delivery orders with handwritten notations purportedly showing that the goods were delivered to AT-SAF, see Delivery Orders, DE #1 at ECF pp. 44-45.   Based on the foregoing, Jincheng alleges that the total amount due from AT-SAF was $43,205.41.   See Summary of Invoices at ECF p. 47.[8]   Jincheng claims that it is owed $1,922.41 in connection with the parties' June 13th Agreement, taking into account two payments made by AT-SAF towards this balance – one on September 7, 2016 for $23,283.00 and another on September 12, 2016 totaling $18,000.00.   See id.

### 4. June 27, 2016 Agreement

Plaintiff also attaches a commercial invoice numbered JC160627 and dated June 27, 2016.  See Invoice JC160627, DE #1 at ECF p. 7 (hereafter, referred to as the "June 27th

---

[8] Although many of the Agreements described herein are accompanied by CBP Entry Summaries reflecting additional fees, Jincheng does not appear to include CBP fees when calculating the total amount due from AT-SAF.   Accordingly, this Court does not include these sums in its own calculations.

Agreement"). That invoice provides for 3,820 pieces of scaffolding accessories valued at

$38,050.00, plus ocean freight costs totaling $3,500.00 and DDP charges of $2,392.00. See id.

It also lists "terms and conditions" including a delivery date of "35 days after receiving 30%

deposit, balance against B/L copy[.]" Id. Plaintiff also proffers (1) a second invoice dated

September 21, 2016, which notes that the actual DDP paid totaled $3,567.45, see Actual DDP

Invoice, DE #1 at ECF p. 8, (2) a CBP Entry Summary noting $179.70 in additional fees, see

CPB Entry Summary, DE #1 at ECF p. 9, and (3) multiple delivery orders with handwritten

notations purportedly showing that the goods were delivered to AT-SAF, see Delivery Orders,

DE #1 at ECF pp. 10-11. Based on the foregoing, Jincheng alleges that the total amount due

from AT-SAF was $45,122.59. See Summary of Invoices at ECF p. 47. Jincheng claims that it

is owed $5,117.45 in connection with the parties' June 27th Agreement, taking into account AT-

SAF's November 4, 2016 payment totaling $40,000.00. See id.

### 5. June 28, 2016 Agreement

Also offered by plaintiff is a commercial invoice numbered JC160628 and dated June 28,

2016. See Invoice JC160628, DE #1 at ECF p. 12 (hereafter, referred to as the "June 28th

Agreement"). That invoice provides for 8,495 pieces of scaffolding accessories valued at

$36,434.85, plus ocean freight costs totaling $3,100.00 and DDP charges of $2,192.00. See id.

It also lists "terms and conditions" including a delivery date of "35 days after receiving 30%

deposit, balance against B/L copy[.]" Id. Plaintiff also proffers (1) a second invoice dated

October 24, 2016, which notes that the actual DDP paid totaled $2,623.66, see Actual DDP

Invoice, DE #1 at ECF p. 13, and (2) a CBP Entry Summary noting $173.66 in additional fees,

see CPB Entry Summary, DE #1 at ECF p. 14. Based on the foregoing, Jincheng alleges that

the total amount due from AT-SAF was $42,158.51.   See Summary of Invoices at ECF p. 47.

Jincheng claims that it is owed $15,158.51 in connection with the parties' June 28th Agreement,

taking into account AT-SAF's January 5, 2017 payment totaling $27,000.00.   See id.

### 6.  August 28, 2016 Agreement

Next, plaintiff offers a commercial invoice numbered JC160826 and dated August 28,

2016.   See Invoice JC160826, DE #1 at ECF p. 15 (hereafter, referred to as the "August 26th

Agreement").   That invoice provides for 5,496 pieces of scaffolding accessories valued at

$37,180.78, plus ocean freight costs totaling $3,850.00 and DDP charges of $2,192.00.   See id.

It also lists "terms and conditions" including a delivery date of "35 days after receiving 30%

deposit, balance against B/L copy[.]"   Id.   Plaintiff also proffers (1) a second invoice dated

November 14, 2016, which notes that the actual DDP paid totaled $2,845.27, see Actual DDP

Invoice, DE #1 at ECF p. 16, (2) multiple delivery orders with handwritten notations purportedly

showing that the goods were delivered to AT-SAF, see Delivery Orders, DE #1 at ECF pp. 17-

18, and (3) a CBP Entry Summary noting $175.27 in additional fees, see CPB Entry Summary,

DE #1 at ECF p. 19.   Based on the foregoing, Jincheng alleges that the total amount due from

AT-SAF was $43,876.05.   See Summary of Invoices at ECF p. 47.   Jincheng claims that it is

owed $13,876.05 in connection with the parties' August 28th Agreement, taking into account

AT-SAF's March 6, 2017 payment totaling $30,000.00.   See id.

### 7.  September 21, 2016 Agreement

Plaintiff also submits a commercial invoice numbered JC160921 and dated September

21, 2016.   See Invoice JC160921, DE #1 at ECF p. 33 (hereafter, referred to as the "September

21st Agreement").   That invoice provides for 1,727 pieces of scaffolding accessories valued at

$16,890.86, plus ocean freight costs totaling $2,850.00 and DDP charges of $1,650.00.   See id. It also lists "terms and conditions" including a delivery date of "35 days after receiving 30% deposit, balance against B/L copy[.]"   Id.   Plaintiff also proffers (1) a second invoice dated November 11, 2016, which notes that the actual DDP paid totaled $1,500.27, see Actual DDP Invoice, DE #1 at ECF p. 34, and (2) a delivery order with handwritten notations purportedly showing that the goods were delivered to AT-SAF, see Delivery Orders, DE #1 at ECF p. 35. Based on the foregoing, Jincheng alleges that the total amount due from AT-SAF was $21,241.13.   See Summary of Invoices at ECF p. 47.   Jincheng claims that, taking into account a February 21, 2017 payment by AT-SAF totaling $30,000.00, AT-SAF received a credit of $8,758.87, because it paid more than was owed pursuant to the parties' September 21st Agreement.   See id.

**8. October 12, 2016 Agreement**

Also attached to the Complaint is a commercial invoice numbered JC161012 and dated October 12, 2016.   See Invoice JC161012, DE #1 at ECF p. 20 (hereafter, referred to as the "October 12th Agreement").   That invoice provides for 4,879 pieces of scaffolding accessories valued at $37,202.97, plus ocean freight costs totaling $5,260.00 and DDP charges of $2,805.00. See id.   It also lists "terms and conditions" including a delivery date of "35 days after receiving 30% deposit, balance against B/L copy[.]"   Id.   Plaintiff also proffers (1) a second invoice dated December 16, 2016, which notes that the actual DDP paid totaled $2,935.37, see Actual DDP Invoice, DE #1 at ECF p. 21, (2) a CBP Entry Summary noting $175.37 in additional fees, see CPB Entry Summary, DE #1 at ECF p. 22, and (3) multiple delivery orders with handwritten notations purportedly showing that the goods were delivered to AT-SAF, see Delivery Orders,

8

DE #1 at ECF pp. 23-24.   Based on the foregoing, Jincheng alleges that the total amount due

from AT-SAF was $45,398.34.   See Summary of Invoices at ECF p. 47.   Jincheng claims that it

is owed $25,398.34 in connection with the parties' October 12th Agreement, taking into account

AT-SAF's March 31, 2017 payment totaling $20,000.00.   See id.

### 9.   October 26, 2016 Agreement

Also affixed to the pleading is a commercial invoice numbered JC161026 and dated

October 26, 2016.   See Invoice JC161026, DE #1 at ECF p. 25 (hereafter, referred to as the

"October 26th Agreement").   That invoice provides for 1,200 pieces of scaffolding accessories

valued at $34,028.00, plus ocean freight costs totaling $5,260.00 and DDP charges of $2,805.00.

See id.   It also lists "terms and conditions" including a delivery date of "35 days after receiving

30% deposit, balance against B/L copy[.]"   Id.[9]   Plaintiff also proffers (1) a second invoice

dated January 6, 2017, which notes that the actual DDP paid totaled $3,655.41, see Actual DDP

Invoice, DE #1 at ECF p. 26, (2) multiple delivery orders with handwritten notations purportedly

showing that the goods were delivered to AT-SAF, see Delivery Orders, DE #1 at ECF pp. 27-

28, and (3) a CBP Entry Summary noting $160.41 in additional fees, see CPB Entry Summary,

DE #1 at ECF p. 29.   Based on the foregoing, Jincheng alleges that the total amount due from

AT-SAF was $42,943.41.   See Summary of Invoices at ECF p. 47.   Jincheng claims that it is

owed $22,943.41 in connection with the parties' October 26th Agreement, taking into account

AT-SAF's May 5, 2017 payment totaling $20,000.00.   See id.

### 10. November 8, 2016 Agreement

The tenth commercial invoice is numbered JC161108 and dated November 8, 2016.   See

---

[9] This commercial invoice is the only one of the eleven proffered to the Court that displays a signature line.   Neither party appears to have signed this document.

9

Invoice JC161108, DE #1 at ECF p. 30 (hereafter, referred to as the "November 8th Agreement"). That invoice provides for 1,100 pieces of scaffolding accessories valued at $34,474.00, plus ocean freight costs totaling $6,060.00 and DDP charges of $2,740.00. See id. It also lists "terms and conditions" including a delivery date of "35 days after receiving 30% deposit, balance against B/L copy[.]" Id. Based on the foregoing, Jincheng alleges that the total amount due from AT-SAF was $43,274.00. See Summary of Invoices at ECF p. 47. Jincheng claims that it is owed $13,274.00 in connection with the parties' November 8th Agreement, taking into account AT-SAF's June 6, 2017 payment totaling $30,000.00. See id.

**11. November 18, 2016 Agreement**

The final commercial invoice provided to the Court is numbered JC161118 and dated November 18, 2016. See Invoice JC161118, DE #1 at ECF p. 31 (hereafter, referred to as the "November 18th Agreement"). That invoice provides for 2,500 pieces of scaffolding accessories valued at $34,798.00, plus ocean freight costs totaling $6,060.00 and DDP charges of $2,740.00. See id. It also lists "terms and conditions" including a delivery date of "35 days after receiving 30% deposit, balance against B/L copy[.]" Id. Plaintiff also submits a message addressed to "Susan" from Shawanna Barnes, the Senior Team Lead at Import Door Group which notes detention, chassis, and storage charges for two shipments (for a handful of days) totaling $995.00. See Additional Document, DE #1 at ECF p. 32.[10] Based on the foregoing, Jincheng alleges that the total amount due from AT-SAF was $44,593.00. See Summary of Invoices at ECF p. 47. Jincheng claims that it is owed $4,593.00 in connection with the parties' November 18th Agreement, taking into account two payments made by AT-SAF towards this

---

[10] In the absence of evidence to the contrary, the Court accepts as accurate a handwritten notation listing the invoice number (JC161118), and thus tying these charges to the November 18th Agreement.

10

balance – one on July 10, 2017 for $30,000.00 and another on October 28, 2017 for $10,000.00.
See id.

## PROCEDURAL HISTORY

Plaintiff commenced this action on February 11, 2020.   See Compl.   Defendant was
timely served with process on April 28, 2020, via the New York Secretary of State's Office, see
Affidavit of Service (May 5, 2020), DE #5, and, after defendant failed to file an answer, the
Clerk of the Court issued an Entry of Default on May 29, 2020, see Entry of Default (May 29,
2020), DE #7.   On June 4, 2020, plaintiff moved for default judgment pursuant to Rule 55(b)(2)
of the Federal Rules of Civil Procedure (the "FRCP"), see Request for Default Judgment at ECF
pp. 1-2, and the following day, Judge DeArcy Hall referred the pending motion to the
undersigned magistrate judge for preparation of a report and recommendation, see Referral
Order.   This Court subsequently issued a one-page scheduling order on June 11, 2020, requiring
plaintiff to file a memorandum of law in support of its motion for default judgment, and ordering
defendant to file its opposition to plaintiff's motion for default judgment no later than July 10,
2020.   See Order (June 11, 2020), DE #10.   As of the date of this opinion, defendant has neither
responded to the Complaint nor otherwise appeared in this action.

## DISCUSSION

After the Clerk of the Court enters a Certificate of Default, the District Court may, on
application, enter a default judgment if a defendant "has failed to plead or otherwise defend" an
action.   See Fed. R. Civ. P. 55(a)-(b); see also S.D.N.Y./E.D.N.Y. Local Civ. R. 55.2(a)-(b).
"A defendant's default is an admission of all well-pleaded factual allegations in the complaint
except those relating to damages."   Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.,

702 F.Supp.2d 104, 111 (E.D.N.Y. 2010) (citing <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992)); <u>see also</u> Fed. R. Civ. P. 8(b)(6).   The plaintiff bears the burden of establishing damages, <u>see</u> <u>Greyhound Exhibitgroup</u>, 973 F.2d at 158, which the court must "ascertain . . . with reasonable certainty[,]" <u>Credit Lyonnais Secs. (USA), Inc. v. Alcantara</u>, 183 F.3d 151, 155 (2d Cir. 1999), either by evaluating affidavits or documentary evidence, <u>see</u> <u>Fustok v. ContiCommodity Servs., Inc.</u>, 873 F.2d 38, 40 (2d Cir. 1989), or, in its discretion, by holding an evidentiary hearing, <u>see, e.g.</u>, <u>Action S.A. v. Marc Rich & Co., Inc.</u>, 951 F.2d 504, 508 (2d Cir. 1991).

## I.   Sufficiency of Service

"A default judgment is ordinarily justified where a defendant fails to respond to the complaint."   <u>SEC v. Anticevic</u>, No. 05 CV 6691(KMW), 2009 WL 4250508, at *2 (S.D.N.Y. Nov. 30, 2009) (citing, *inter alia*, <u>Bermudez v. Reid</u>, 733 F.2d 18, 21 (2d Cir. 1984)).   Before entering a default judgment, the Court should confirm that the defendant was duly served and notified of the lawsuit.   <u>See</u> <u>LG Capital Funding, LLC v. Volt Solar Sys.</u>, 15 Civ. 1404 (KAM) (VMS), 2016 WL 11447845, at *4 (E.D.N.Y. Aug. 15, 2016), <u>adopted</u>, 2016 WL 4718014 (E.D.N.Y. Sept. 9, 2016).

Rule 4 of the FRCP permits service of a corporation in a manner authorized by the law of the forum state.   <u>See</u> Fed. R. Civ. P. 4(e)(1); 4(h)(1)(A).   New York law provides for service of process on a corporation through New York's Secretary of State.   <u>See</u> N.Y. Bus. Corp. Law § 306(b)(1).   Jincheng served AT-SAF with the summons and Complaint through the New York Secretary of State.   <u>See</u> Affirmation of Matthew Sava in Support of Request for Certificate of Default (May 22, 2020) ("Sava Aff.") ¶ 4, DE #6; Affidavit of Service.   Accordingly, Jincheng

properly served AT-SAF with the summons and Complaint.

## II.     Liability

If a defendant defaults and the plaintiff moves for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor[.]"   Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citation omitted). Additionally, "a party's default is deemed to constitute a concession of all well pleaded allegations of liability[.]"   Greyhound Exhibitgroup, Inc., 973 F.2d at 158; see Morales v. B&M Gen. Renovation Inc., 14-cv-7290 (MKB) (MDG), 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), adopted, 2016 WL 1258482 (E.D.N.Y. Mar. 29, 2016).

"Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."   LaBarbera v. ASTC Labs, Inc., 752 F.Supp.2d 263, 270 (E.D.N.Y. 2010) (citation and internal quotation marks omitted); see also 10A Charles A. Wright et al., Federal Practice & Procedure: Civil § 2688.1 (3d ed. 2017) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief. Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.").   In other words, since the defaulting defendant has not admitted any legal conclusions, the plaintiff "must establish that on the law it is entitled to the relief it seeks, given the facts as established by the default."   Finkel v. Triple A Grp., Inc., 708 F.Supp.2d 277, 280 (E.D.N.Y. 2010) (citation omitted); see Lyons P'ship, 702 F.Supp.2d at 111 (E.D.N.Y. 2010).   If the elements of the claim are established by the complaint's factual allegations, the defendant's default establishes its

liability.   See Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 69 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973).

The Complaint at issue contains causes of action for breach of contract and account stated.   See generally Compl.   The Court will address each of these causes of action in turn.[11]

## A.  Breach of Contract

To state a a cause of action for breach of contract under New York law, a plaintiff must allege: (1) the existence of a contract; (2) performance of a contract by one party; (3) breach by the other party; and (4) damages suffered as a result of the breach.   See Beautiful Jewellers Private Ltd. v. Tiffany & Co., 438 F.App'x 20, 21-22 (2d Cir. 2011) (citation omitted).   The allegations set forth the Complaint present a valid claim for breach of contract.

### 1.  First Element – Existence of a Contract

The Complaint alleges that "AT-SAF entered in an agreement with Jincheng for the purchase of scaffolding accessories and related goods[,]" and states that defendant "breached the contract by failing to pay the full outstanding balance of invoices for the products delivered to

---

[11] This Court has jurisdiction in this case pursuant to 28 U.S.C. § 1332, based on the diversity of the parties and the amount in controversy.   A federal district judge sitting in diversity applies the substantive law of the forum state in which it sits, including that state's choice-of-law rules.   See Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1538-39 (2d Cir. 1997).   Since this action was brought in the Eastern District of New York, New York choice-of-law principles govern.   Cf. Crescent Oil & Shipping Servs., Ltd. v. Phibro Energy, Inc., 929 F.2d 49, 52 (2d Cir. 1991).
   "Under New York choice of law rules, a court should apply the law of the state with the most substantial interest in the issues to be resolved."   First Bank & Tr. v. Coventina Constr. Corp., 18 Civ. 6648 (NGG) (VMS), 2019 WL 4120363, at *1 n.3 (E.D.N.Y. July 23, 2019) (citation omitted), adopted, 2019 WL 4089393 (E.D.N.Y. Aug. 26, 2019).   Because the goods at issue in the instant case were sent from China to New York; defendant is a New York corporation; and plaintiff – a China-based entity – applies New York law in its memorandum of law, this Court applies New York law for the purposes of this report and recommendation.   See id.; see also USHA Holdings, LLC v. Franchise India Holdings, Ltd., 12 CV 3492 (KAM), 2015 WL 13741743, at *8 (E.D.N.Y. Sept. 11, 2015) (observing that New York law requires "that [the] party wishing to apply the law of a foreign state show how that law differs from the forum state's law[,] [and] [f]ailure to do so results in the application of New York law") (internal quotation marks and citation omitted), adopted, 2015 WL 5719647 (E.D.N.Y. Sept. 29, 2015).

and accepted by AT-SAF." Compl. ¶¶ 19, 21. Despite asserting a breach of contract claim, see id. ¶¶ 18-22, Jincheng has not provided the Court with any formal contract or contracts underlying the transactions described in the pleading. Rather, in support of its claim, plaintiff proffers (1) multiple invoices (and related documents), in connection with which there are outstanding balances alleged to total $96,299.15, see Invoices and Related Documents, DE #1 at ECF pp. 6-45; and (2) a WhatsApp message from AT-SAF President Sarbjit Singh acknowledging that AT-SAF owes Jincheng an outstanding balance of approximately $95,000, see WhatsApp Messages, DE #1 at ECF pp. 48-51. As discussed below, based on the allegations set forth in the Complaint and the documents attached thereto, this Court finds that Jincheng has demonstrated the existence of multiple contracts so as to satisfy the first element of this cause of action.

As an initial matter, the Statute of Frauds provides that a contract for the sale of $500 or more of goods is unenforceable unless there is "some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought . . . ." N.Y.U.C.C. § 2-201(1). Here, while the Complaint avers that the parties contracted for the exchange of goods for money, see, e.g., Compl. ¶ 2 (noting Jincheng supplied scaffolding accessories and related products to AT-SAF); id. ¶ 3 (noting that Jincheng delivered and AT-SAF accepted the "goods"), none of the invoices attached to the Complaint are signed by a representative of AT-SAF.

The lack of a signature on these invoices is not fatal to plaintiff's breach of contract claim; a "contract which does not satisfy the requirements of [N.Y.U.C.C. § 2-201] subsection (1)[,] but which is valid in other respects is enforceable . . . (c) with respect to goods for which

payment has been made and accepted or which have been received and accepted."   Barouh Eaton Allen Corp. v. Cillco, Inc., No. 06-CV-1820 DLI/KAM, 2008 WL 465493, at *5 (E.D.N.Y. Feb. 15, 2008) (citing N.Y.U.C.C. § 2-201(3)(c)).   "The function of this provision is to preclude a party from raising a statute of frauds defense where the parties have already performed their obligations under the alleged contract."   Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 782 (2d Cir. 2003) (opining that the rationale underlying this exception to the Statute of Frauds is that the receipt and acceptance of goods constitutes an unambiguous overt admission by both parties that a contract actually exists); see Boston Scientific Corp. v. N.Y. Ctr. for Specialty Surgery, No. 14-CV-6170 (RRM), 2015 WL 13227994, at *2 n.1 (E.D.N.Y. Aug. 31, 2015) (noting that unsigned invoices sufficiently establish the existence of a contract for the sale of goods because they "indicate that the goods were delivered and accepted, and one payment was successfully made to the plaintiff"), adopted, 2016 WL 8711378 (E.D.N.Y. Jan. 29, 2016).

Here, the allegations set forth in the Complaint, combined with information set forth in the declaration of Chuanjin Zhang, Jincheng's Chief Operating Officer, as well as the invoices themselves, make clear that both parties performed (at least part of) their contractual obligations: Jincheng delivered the scaffolding accessories and related goods ordered by AT-SAF, and AT-SAF received and accepted those goods so as to satisfy section 2-201(3)(c).   See Invoices and Related Documents; Ex. 4 to Sava Aff. (Declaration of Chuanjin Zhang in Support of Request for Default Judgment) (June 4, 2020) ("Zhang Decl."), DE #8 at ECF pp. 70-71.   Accordingly, this Court construes the unsigned commercial invoices submitted with the Complaint as contracts for the purposes of this default judgment motion, see, e.g., Claudia v. Olivieri Footwear Ltd., No.

96 CIV. 8052(HB)(THK), 1998 WL 164824, at *5 (S.D.N.Y. Apr. 7, 1998) ("Under certain circumstances, invoices may be viewed as contracts[.]"), and finds that Jincheng has satisfied the first prong of its breach of contract cause of action.

### 2. Remaining Elements

Plaintiff has also sufficiently pled that it performed its contractual obligations under the contracts by timely delivering the agreed-upon scaffolding accessories to AT-SAF in New York, see Compl. ¶ 12; see also Zhang Decl. ¶ 5, thereby satisfying the second element of its breach of contract claim.   With respect to the third element, AT-SAF materially breached eight of the eleven agreements between the parties by failing to pay the outstanding balance under each such invoice despite Jincheng's request for payment.[12]   See Compl. ¶¶ 13-17; see also Zhang Decl. ¶¶ 6-7.   Lastly, as to the fourth element of Jincheng's first cause of action, and as detailed in the Damages section of this opinion, plaintiff has sufficiently pled that Jincheng has suffered actual damages in the amount of the unpaid balance.   See Compl. ¶ 22; see also Zhang Decl. ¶ 7.

Having alleged each element of the first cause of action, Jincheng has established its claim for breach of contract under New York law.[13]

---

[12] As noted earlier, see supra pp. 7-8, Jincheng acknowledges that AT-SAF overpaid the amount due in connection with the September 21st Agreement.   In addition, for the reasons explained in the Damages section of this opinion, this Court concludes that AT-SAF also made payments equal to or greater than the balance due on the April 19th and April 23rd Agreements.

[13] New York law provides a six-year statute of limitations for breach of contract claims.   See N.Y. C.P.L.R. § 213; see also Bice v. Robb, 324 F.App'x 79, 81 (2d Cir. 2009) (noting the same).   Because the eleven commercial invoices are from 2016, and since plaintiff filed the instant suit in February 2020, Jincheng's first cause of action is well within the applicable limitations period.

**B. Account Stated**

Plaintiff also seeks to recover under an account stated claim. See Compl. ¶¶ 23-29. The Second Circuit has held that a plaintiff seeking compensation for the same injury under different legal theories is entitled to only one recovery. See Indu Craft, Inc. v. Bank of Baroda, 47 F.3d 490, 497 (2d Cir. 1995) (citing Wickham Contracting Co. v. Bd. of Educ., 715 F.2d 21, 28 (2d Cir. 1983)). This Court has already recommended that plaintiff recover under a theory of breach of contract, see supra Part II.A, and, as a result, this Court need not reach the question of whether its allegations also establish liability for an account stated. See, e.g., Arch Specialty Ins. Co. v. Kajavi Corp., 18-CV-4043 (NGG) (SMG), 2019 WL 3719461, at *3 (E.D.N.Y. July 11, 2019) ("Plaintiff's claim for account stated, however, fails [because] [a] defendant cannot be found liable on both an account stated claim . . . and a breach of contract claim . . . in connection with the same allegations of a failure to pay monies owed.") (citations and internal quotation marks omitted), adopted, 2019 WL 3717441 (E.D.N.Y. Aug. 7, 2019).

**III. Damages**

Though defendant, by defaulting, admits all well-pleaded allegations pertaining to liability, the Court has discretion to determine whether plaintiff has substantiated its damages request. See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 189 (2d Cir. 2015). Under New York law, damages for breach of contract "attempt[] to secure to the injured party the benefit of his bargain, subject to the limitations that the injury . . . was foreseeable, and that the amount of damages claimed be measurable with a reasonable degree of certainty and, of course, adequately proven." Terwilliger v. Terwilliger, 206 F.3d 240, 248 (2d Cir. 2000) (quoting Freund v. Wash. Sq. Press,

Inc., 34 N.Y.2d 379, 382 (1974)).   "[F]undamental" to this analysis is "that the injured party should not recover more from the breach than he would have gained had the contract been fully performed."   Id.

### A. Deficiency Amount

Jincheng argues that is entitled to compensatory damages totaling $96,299.15.   See Proposed Judgment (June 4, 2020), DE #8 at ECF p. 2; see also Pl. Mem. at 3, 7.   Plaintiff proffers for the Court's review commercial invoices and related documents described herein, as well as a chart displaying for each of these agreements, *inter alia*, (1) the total cost of the goods and related expenses for which AT-SAF became obligated to pay Jincheng; (2) the dates and amounts of any payments made by AT-SAF to Jincheng; and (3) the unpaid balance, if any, that AT-SAF owed to Jincheng as of January 14, 2020.   According to the Chuanjin Zhang declaration, AT-SAF has admitted in writing that it has not paid Jincheng the approximate amount sought, and does not dispute the amount it owes.   See Zhang Decl. ¶ 7 at ECF p. 71; see also WhatsApp Messages.

Despite this evidentiary showing, the Court concludes that Jincheng has overstated the total account due by more than $3,000.00.   The discrepancies between Jincheng's calculations and those of the Court involve charges related to the April 19th and April 23rd Agreements that are not supported by the documentation, but for which Jincheng nevertheless seeks damages. More specifically, the April 19th Agreement reflects DDP charges of $1,885.80, while the Summary of Invoices includes "Actual DDP Charges Incurred" in the amount of $2,835.80.   See Summary of Invoices, DE #1 at ECF p. 47.   Plaintiff does not cite to any documentation substantiating this greater amount, and the Court has been unable to locate any such support in

19

the record.[14]    Accordingly, relying on the DDP charge of $1,885.80 reflected in the April 19th

Agreement, the Court calculates an overpayment by AT-SAF of $380.20, rather than an

underpayment of $569.80, as alleged by Jincheng.

Jincheng's calculations in connection with the balance due under the April 23rd

Agreement are similarly overstated, in that the amount alleged by Jincheng ($2,205.05) is based

in part on $3,235.55 in Actual DDP Charges.    Again, the only DDP charges supported by the

record are those specified in the April 23rd Agreement, in the amount of $1,030.50.    Therefore,

taking into account that lesser sum, AT-SAF fully paid the balance due in connection with the

April 23rd Agreement.

Accordingly, having recalculated the documented amounts due, this Court respectfully

recommends that Jincheng be awarded a total of $93,144.10, taking into account the $380.20 and

$8,758.87 credits arising from AT-SAF's overpayment in connection with the April 19th and

September 21st Agreements.

**B. Pre- and Post-Judgment Interest**

Plaintiff also seeks an award of pre- and post-judgment interest.    See Proposed Order

(June 4, 2020) at ECF pp. 3-4, DE #8; Compl. ¶ 3 (seeking "default interest"); id. *ad damnum*

clause (seeking, *inter alia*, "interest").

With respect to pre-judgment interest, New York law entitles a prevailing plaintiff to pre-

judgment interest on any sum awarded for breach of contract, "computed from the earliest

ascertainable date the cause of action existed[.]"    See, e.g., Bank of Am., N.A. v. Brooklyn

---

[14] Included in the submissions is documentation consisting mostly of Chinese characters and numbers. See *supra* notes 5 & 7.    The Court does not rely on foreign-language submissions that have not been translated.    Moreover, the numbers reflected in one of the foreign-language submissions – whatever they purport to signify – do not correspond to the Actual DDP Charge on the Summary of Invoices.

Carpet Exch., Inc., No. 15 cv 5981 (LGS) (DF), 2016 WL 8674686, at *5 (S.D.N.Y. May 13,

2016) (quoting N.Y. C.P.L.R. § 5001(b)), adopted, 2016 WL 3566237 (S.D.N.Y. June 27, 2016).

"Where damages were incurred at various times . . . the Court has discretion to choose a

reasonable accrual date."   Blue v. Finest Guard Servs., Inc., No. 09 CV 133(ARR), 2010 WL

2927398, at *12 (E.D.N.Y. June 24, 2010) (citation omitted).   Absent any contractual interest

provision specifying otherwise, pre-judgment interest is calculated using New York's nine

percent (9%) per annum statutory interest rate.   See N.Y. C.P.L.R. § 5004.

Here, Jincheng seeks pre-judgment interest at a statutory rate of nine percent per annum,

from October 28, 2017, or "the date when [d]efendant made the last payment to [p]laintiff, which

is eleven months after the latest-in-time invoice [was] due[,]" through the date of entry of final

judgment.   See Pl. Mem. at 7.   Because the date from which plaintiff seeks pre-judgment

interest is a more "conservative measure of the date of breach," id. at 7, meaning plaintiff is

seeking an interest amount considerably less than to which plaintiff is entitled, its request should

be granted.   Accordingly, the Court respectfully recommends that plaintiff be awarded pre-

judgment interest, calculated at nine percent per annum, from October 28, 2017 through the entry

of judgment.

As to post-judgment interest, which is governed by federal statute, 28 U.S.C. § 1961(a),

see Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008), "an award of post-judgment interest

is mandatory," and is calculated at the statutory rate prescribed by 28 U.S.C. § 1961(a), see MRC

Indus., Inc. v. Global Therapy Sys., LLC, No. 06-CV-3633 (JS)(WDW), 2009 WL 2461106, at

*4 (E.D.N.Y. Aug. 7, 2009) (citing Schipani, 541 F.3d at 165).   Therefore, this Court

respectfully recommends that Jincheng be awarded post-judgment interest on its monetary

award, to be calculated using the federal rate set forth in 28 U.S.C. § 1961(a), from the date the

Clerk of the Court enters judgment in this action until the date of payment.

### C. Costs

Jincheng also seeks costs in the amount of $550.46, consisting of $400.00 for the court

filing fee, $13.92 for mailing, and $136.54 related to service of process.   See Proposed Order

(June 4, 2020) at p. 4, DE #8; Compl. *ad damnum* clause (requesting "costs of suit"); see also

Sava Aff. ¶ 18 (describing the costs incurred in the prosecution of this matter).   In support of its

application for costs, plaintiff has proffered receipts showing each of these expenditures.   See

Ex. 5 to Sava Aff. (Receipts) (June 4, 2020), DE #8 at ECF pp. 72-75.   However, while plaintiff,

as the prevailing party, is entitled to recover taxable costs pursuant to Rule 54(d) of the Federal

Rules of Civil Procedure, see Fed. R. Civ. P. 54(d)(1), absent explicit statutory or contractual

authorization to the contrary, costs recoverable under Rule 54 include only those taxable costs

set forth in 28 U.S.C. § 1920, and a district court has no discretion to tax, as costs, fees and

disbursements beyond those specified therein, see Crawford Fitting Co. v. J.T. Gibbons, Inc.,

482 U.S. 437, 441-42 (1987); U.S. for Use & Benefit of Evergreen Pipeline Constr. Co. v.

Merritt Meridian Constr. Corp., 95 F.3d 153, 172 (2d Cir. 1996); Banda v. Haro, No. 01 CIV

5552 RMB RLE, 2001 WL 1702205, at *4 (S.D.N.Y. Jan. 10, 2001).

In the instant case, while the filing fee is a permissible cost to be taxed under that

provision, see 28 U.S.C. § 1920(1), neither generic mailing costs nor service fees are enumerated

in section 1920, and therefore, should not be recovered in this action, see, e.g. Evergreen

Pipeline, 95 F.3d at 172 ("[T]he plain language of [section 1920] clearly does not authorize the

shifting of private process fees.").   Accordingly, this Court respectfully recommends that the

22

District Court grant Jincheng's request for costs in the amount of $400.00 for the filing fee associated with this case, but that plaintiff's request for additional costs totaling $150.46 be denied.

## CONCLUSION

For the foregoing reasons, the undersigned magistrate judge respectfully recommends that plaintiff's motion for default judgment be granted in part and denied in part, and that plaintiff be awarded (1) compensatory damages, consisting of $93,144.10; (2) pre-judgment interest to be calculated pursuant to N.Y. C.P.L.R. § 5004, from October 28, 2017, through the date of entry of judgment; (3) post-judgment interest pursuant to 28 U.S.C. § 1961(a); and (4) costs totaling $400.00.

Any objections to this Report and Recommendation must be filed with the Honorable LaShann DeArcy Hall on or before **September 8, 2020**.   Failure to file timely objections may waive the right to appeal the District Court's Order.   See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

Jincheng is directed to promptly transmit copies of this Report and Recommendation to the defaulting defendant, via overnight Federal Express, at the following address, and to file proof of service regarding the same:

AT-SAF Inc.
95-25 114th Street
South Richmond Hill, New York, 11419

**SO ORDERED.**

**Dated:**    **Brooklyn, New York**
           **August 20, 2020**

           /s/ *Roanne L. Mann*

           **ROANNE L. MANN**
           **UNITED STATES MAGISTRATE JUDGE**